Filed 3/2/15  P. v. Gonzalez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JUAN G. GONZALEZ,<br><br>Defendant and Appellant. | B251828<br><br>(Los Angeles County<br>Super. Ct. No. KA101599) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas Falls, Judge.  Affirmed.

Daniel R. McCarthy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Juan G. Gonzalez appeals from the judgment of conviction for corporal injury to the parent of his child, assault by means of force likely to produce great bodily injury, cruelty to a child by inflicting injury, and disobeying a domestic relations court order. He argues the court committed prejudicial error in excluding the testimony of a certain defense witness. We affirm.

**FACTS**

*1. Prosecution Evidence*

A.R. and appellant have three children together—L. (age 11), N. (age seven), and G. (age one). A.R. had known and lived with appellant for approximately 15 years. She agreed that their relationship could be characterized as "mutually violent." On April 14, 2013, she was no longer living with appellant and lived with her mother. L. was in the front yard when she saw appellant drive up, and she ran inside and locked the door. A.R. was in the kitchen with her two younger daughters when L. came in and told her appellant had arrived.

A.R. asked N. to see what appellant wanted. N. went to the stairs at the front door to talk to appellant. A.R. followed her out and met appellant on the front stairs, where N. was also. L. was inside the house just behind them; she could see N., A.R., and appellant from where she was standing.

A.R. told appellant she did not want to reunite with him because she was "tired." He tried to hug or kiss her by grabbing her arms and pulling her towards him. She told him to stop. N. was on A.R.'s left side; she was crying and telling appellant to stop also. Appellant told N. to go inside, but she did not leave. A.R. looked down at N., and the next she remembered, she was laying on the floor and spitting up blood, and she heard crying and screaming. L. saw appellant push N. into the stair railing and then hit A.R. with a closed fist. She also saw A.R. fall and hit her head on the door. Appellant did not say anything and walked away.

L. and N. were crying. L. saw blood coming from A.R.'s mouth and got her a bag of frozen peas to put her on face. L. called the police. An ambulance arrived and took A.R. to the emergency room. Her jaw was broken and she had her teeth "pushed in" and

2

"out of place." She had to see a dentist to repair her teeth and jaw. Her jaw was still wired at the time of trial. A.R. said the only time she touched appellant that day was to hold him back from her when he tried to kiss her. L. remembered her mother pushing appellant away, but she did not remember A.R. hitting or kicking appellant.

Officer David Rios observed appellant four days later during the booking process. Appellant had a half-inch laceration on his right hand just above his knuckle. The officer did not notice any other marks or injuries on appellant's body.

Another incident involving appellant occurred months earlier, in September 2012. Appellant walked into A.R.'s house, and when she asked him to leave, he refused. "There was a lot of yelling," and he pushed A.R. A.R.'s mother "ran towards him," and he held her mother back. The police were called to the home.

The parties stipulated that appellant was convicted of battery against the mother of his child (§ 243, subd. (e)(1)) on October 4, 2012. In that case, he was subject to a criminal protective order requiring him to stay away from A.R. and A.R.'s mother.

## 2. *Defense Evidence*

Appellant testified in his own defense. He said he did not hit A.R. in the face with his fist, but he did see her fall to the ground. She kicked him in the groin and then dove toward him like she was going to tackle him. He had one hand on the stair railing and one on the cane that he was using. He moved out of the way to evade her attack, and she fell and hit her face on the stair railing. N. was "nowhere near" them. He was in pain and in shock. A.R. was conscious and told him she was going to call the police. She was trying to get up, and he was worried she was going to grab something to further attack him. He also heard his daughter yelling, "call the police." He "took off."

A.R., appellant, and appellant's mother, Lourdes Morejon Layug, all said A.R. hit appellant on the head with a laptop approximately five years before the incident on April 14. His head bled, though he did not seek medical treatment.

A.R. said she had also scratched his face before. Appellant said she had scratched his face several times and caused bleeding. Morejon Layug recalled a time when A.R. was visiting appellant at her house. She heard A.R. yelling and then appellant came out

3

of his room with bleeding scratches on his face.  Morejon Layug testified it had been her experience that A.R. lies.

Appellant admitted he had convictions in 2012 for vandalizing A.R.'s vehicle and in 2010 for assault by means of force likely to cause great bodily injury and terrorist threats.  The victims in the assault and terrorist threats case were men who he believed had raped A.R.

## PROCEDURE

The information charged appellant with one count of corporal injury to the parent of his child (Pen. Code, § 273.5, subd. (a)),[1] one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), two counts of cruelty to a child by inflicting injury (§ 273a, subd. (b)), and disobeying a domestic relations court order (§ 273.6, subd. (a)).  As to the corporal injury and assault counts, the information alleged appellant had personally inflicted great bodily injury on A.R. under circumstances involving domestic violence.  (§ 12022.7, subd. (e).)  The information further alleged a prior strike under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12), three prior convictions for which appellant had served prison terms (§ 667.5, subd. (b)), and a prior serious felony conviction (§ 667, subd. (a)(1)).  The jury found appellant guilty as charged and found true the allegation of personally inflicting great bodily injury.  Appellant admitted the prior strike and three prior prison terms.  The court sentenced appellant to a total of 22 years in state prison.  Appellant timely appealed.

## DISCUSSION

Appellant contends the trial court committed prejudicial error when it precluded a witness for appellant, Jillian Rodriguez, from testifying.  We disagree.

### 1.  *Background*

Before the prosecution commenced its case, the court held an Evidence Code section 402 hearing regarding Morejon Layug's testimony.  It ruled Morejon Layug could

---

[1]    Further undesignated statutory references are to the Penal Code.

testify about A.R.'s prior acts of violence against appellant under section Evidence Code section 1103.[2] Defense counsel asked whether the court might allow evidence of acts against any victim, not just appellant. The court responded: "It would be with any victim. . . . [¶] [T]hat might be allowable as well to show that she's a violent person." The court noted defense counsel had "tried to go there" with a female witness who was apparently unavailable.

Further events suggest the unavailable witness was Rodriguez. On the last day of trial, after appellant and his mother had testified, defense counsel indicated she had no more witnesses on her witness list, but Rodriguez was a potential witness who was not on the witness list. Counsel's offer of proof was that A.R. "beat this woman up within a period of . . . one or two years," which she argued was relevant to show A.R.'s aggressive and violent nature. Counsel had talked to Rodriguez several months ago, but Rodriguez said she could not provide contact information because she was in between homes, and thus counsel had been unable to contact Rodriguez since. Rodriguez had simply shown up to court that day. The prosecutor indicated that if the court were to allow Rodriguez's testimony, he would want "at least a couple days" to conduct an investigation into Rodriguez, based on the offer of proof.

The court reasoned the testimony was on a "collateral issue." It ruled Rodriguez could not testify under Evidence Code section 352 because the prejudicial effect of the evidence outweighed any relevance and it would involve an undue consumption of time. Further, the court ruled Rodriguez's testimony was coming "far too late in the game."

*2. Analysis*

The trial court has the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue

---

[2]     Evidence Code section 1103, subdivision (a)(1), permits "evidence of the character or a trait of character . . . of the victim of the crime for which the defendant is being prosecuted" if it is "[o]ffered by the defendant to prove conduct of the victim in conformity with the character or trait of character."

consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review the trial court's ruling excluding testimony for abuse of discretion. (*People v. Lee* (2011) 51 Cal.4th 620, 643; *People v. Waidla* (2000) 22 Cal.4th 690, 725.)

We are not convinced the court abused its discretion here. Appellant contends the court had recognized that Rodriguez's testimony constituted relevant evidence when it decided Morejon Layug could testify about A.R.'s acts of violence; Rodriguez's testimony of A.R.'s violent act would have been similar. But the court did not determine Rodriguez's testimony was irrelevant—only that its probative value was outweighed by other factors under Evidence Code section 352. A trial court is well within its discretion to exclude cumulative evidence that unduly consumes the court's time. (*People v. Williams* (2009) 170 Cal.App.4th 587, 611.) The "state has a strong interest in prompt and efficient trials," and the court has a "duty to consider the burden on jurors and the court itself" during trials. (*Ibid.*) Here, the trial court could have reasonably determined Rodriguez's testimony was cumulative because other admitted testimony demonstrated A.R.'s purportedly aggressive and violent nature. Moreover, by the time defense counsel sought to introduce Rodriguez's testimony, the trial was all but complete, and allowing the testimony could have caused a delay of perhaps several days for the prosecution to investigate the witness.

Even if we were to hold the court erred, any error would not have been prejudicial. Appellant contends the asserted error implicated his substantial constitutional rights, and we must therefore apply the *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*), "harmless beyond a reasonable doubt" standard. (*Id.* at p. 24.) But the routine application of state evidentiary law generally does not violate a defendant's constitutional rights. (*People v. Mills* (2010) 48 Cal.4th 158, 194.) "'Although the complete exclusion of evidence intended to establish an accused's defense may impair his or her right to due process of law,'" that did not occur here, when the jury heard other evidence of A.R.'s arguably violent nature. (*People v. Leonard* (2014) 228 Cal.App.4th 465, 495.) Regardless of whether we apply the *Chapman* standard or the state law standard set forth

in *People v. Watson* (1956) 46 Cal.2d 818, 836, any error was not prejudicial. Appellant's defense was that he never hit A.R.; she attacked and lunged at him and hit her face on the stair railing. Appellant and Morejon Layug both testified A.R. hit appellant with a laptop and scratched his face on different occasions. Appellant contends this was the only evidence of A.R.'s violent nature, and because both of them had an obvious interest in his acquittal, Rodriguez's testimony likely would have made a difference. But A.R. herself testified to hitting appellant on the head with the laptop and scratching his face. Moreover, she admitted the two had a "mutually violent" relationship. The jury was unlikely to discredit the victim's own testimony of her violent acts. There was ample evidence to support appellant's defense, even without Rodriguez's testimony. We cannot say the exclusion of Rodriguez's testimony prejudiced appellant under any standard.[3]

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.          RUBIN, J.

---

[3]     Because there was no prejudicial error in excluding the testimony under Evidence Code section 352, we need not address appellant's second argument that the court erred if it excluded the evidence under the discovery rules (§§ 1054.3, 1054.7).

7